IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:05CV101-MU

| | |
|---|---|
| AMERICAN TIRE DISTRIBUTORS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| AM-PAC TIRE DISTRIBUTORS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction and Memorandum in Support of Motion for Preliminary Injunction, both filed March 8, 2005. On April 4, 2005, Defendant filed its "Brief in Opposition to Plaintiff's Motion for Preliminary Injunction," along with a "Declaration of Milton P. Wroten" and "Declaration of Dennis Mangola." Although it was not necessary for the disposition of Plaintiff's Motion for Preliminary Injunction, as a courtesy to the parties, on April 27, 2005, the Court issued an Order setting a hearing on Plaintiff's Motion for May 12, 2005. Subsequently, on May 10, 2005, Plaintiff filed an "Uncontested Motion for Continuance of Preliminary Injunction Hearing." These Motions are now ripe for disposition by the Court.[1]

### I. FACTUAL AND PROCEDURAL HISTORY

Since 1935, Plaintiff American Tire Distributors, Inc. ("American Tire" or "Plaintiff")

---

[1]Although the Court intended to hold a hearing on Plaintiff's Motion for Preliminary Injunction, due to the substantive briefing by both Plaintiff and Defendant, a hearing was not necessary to the disposition of this Motion. In light of the recent Motion for Continuance, the Court finds that this matter is better served by the issuance of an Order on Plaintiff's Motion for Preliminary Injunction without oral arguments by the parties.

and its predecessor companies have engaged in the business of supporting and supplying automobile tire dealers, service repair shops, and automotive performance shops nationwide with the delivery of products, tools, and programs, including automobile tires, custom wheels, service equipment, shop supplies, marketing programs, training programs, financial consulting services, and a number of other related business resources in this retail market. (Compl. ¶ 11). Similarly, Defendant Am-Pac Tire Distributors, Inc. ("Am-Pac" or "Defendant") is a nationwide automobile tire wholesaler, retailer, and distributor that provides passenger and light truck tires to over 10,000 tire dealers in the United States. (*Id.* ¶ 12).

In early 2004, Am-Pac began negotiating to purchase Target Tire, Inc. ("Target"). (*Id.* 3). As part of these negotiations, in April 2004, Am-Pac and Target entered into a Confidentiality Agreement (the "Agreement"). (*Id.*). Within the Agreement was a non-solicitation provision that provides as follows:

> Further, while negotiations with respect to an acquisition of the Company [Target] by Prospective Purchaser [Am-Pac] are in progress, and for the duration of the term of this Agreement if an acquisition is not consummated, Prospective Purchaser shall not, directly or indirectly, contact any employee of the Company (other than Company employees who respond to bona fide published employment advertisements of Prospective Purchaser or who solely by themselves initiate contact with Prospective Purchaser regarding employment with Prospective Purchaser) without advance notice to, and written approval of, the Company . . . [Am-Pac] agrees that in the event it breaches its covenants . . . ., [Target] shall be entitled as a matter of right to a restraining order, an injunction, a decree or decrees of specific performance, or other relief from a court of competent jurisdiction. . . .

(*Id.* ¶¶ 13, 14). Moreover, the "Agreement may only be assigned with the prior written consent of the parties hereto." (*Id.* Exh. A ¶ 13). The terms of the Agreement were effective for five (5) years beginning April 19, 2004. (*Id.* ¶ 15).

Despite the negotiations, Am-Pac did not acquire Target. However, in September 2004, American Tire purchased Target. (*Id.* ¶ 5). As a result of American Tire's purchase of Target, Milt Wroten ("Wroten") and Norman W. "Robbie" Robinson ("Robinson"), former Target employees, became employed by American Tire. (*Id.* ¶ 16). Specifically, Wroten became American Tire's Sales Manager for the Atlanta Distribution Center and Robinson took over the Alliance and America Car Care Centers ("ACCC") programs as American Tire's Alliance, ACCC Coordinator and Region Marketing manager. (*Id.* ¶ 17). Wroten was an at-will employee of Target and subsequently, an at-will employee of American Tire. Wroten never executed a covenant not to compete with either Target or American Tire. Although Robinson was also an at-will employee, he executed a covenant not to compete with Target. Both Wroten and Robinson reported to Tom Dawson, American Tire's Regional Vice President. (*Id.*).

On December 13, 2004, Wroten and Robinson called Tom Dawson and announced their resignation from employment at American Tire and their intent to work for Am-Pac. (*Id.* ¶ 18). Upon this announcement, Wroten's and Robinson's employment with American Tire was terminated and both are currently working for Am-Pac. (*Id.* ¶ 19).[2]

On March 8, 2005, American Tire filed its Complaint in this matter, alleging that Am-Pac breached the Agreement by soliciting Wroten and Robinson. American Tire further alleges that due to Wroten's and Robinson's positions with American Tire, they have extensive knowledge of American Tire's trade secrets, and other confidential and proprietary business information,

---

[2]American Tire has brought an action against Robinson in the United States District Court for the Northern District of Georgia, alleging that it is a "successor in interest" to Target's covenant not to compete with Robinson and arguing that Robinson violated this covenant not to compete by accepting employment with Am-Pac and soliciting American Tire customers.

including American Tire's product design and development, its current and future marketing and sales strategies, and detailed customer data and pricing information. (*Id.* ¶ 27). American Tire asserted the following claims against Am-Pac: (1) breach of the Agreement and Covenant of Non-Solicitation; (2) unfair and deceptive trade practices; and (3) tortious interference with contract.

American Tire asks the Court to enter an Order granting the Preliminary Injunction restraining Am-Pac from engaging in further activities in violation of the Agreement, including a prohibition against Am-Pac continuing to employ Wroten and Robinson and/or a prohibition against Am-Pac's use of confidential information received from Target that directly or indirectly interferes with American Tire's business or American Tire's business relationships in violation of the Agreement. (Pl. Mem. in Supp. p. 14).

## II.  DISCUSSION

The "balance of hardships" test is used to determine the propriety of preliminary injunctive relief. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). This test weighs the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest. *Id.* Further, the plaintiff bears the burden of establishing that each of the four elements supports granting the injunction. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1992).

**A.     Irreparable Harm to Plaintiff in the Absence of a Preliminary Injunction**

The question of irreparable harm to the plaintiff is the first factor to be considered in a

motion for preliminary injunction. *Id.* If a plaintiff cannot establish that irreparable harm is likely to occur in the absence of a preliminary injunction, that failure alone is sufficient to deny injunctive relief. *Manning v. Hunt*, 119 F.3d 254, 266 (4th Cir. 1997). "Moreover, the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" *Direx*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir. 1989)).

In the instant case, the Court finds that American Tire has not alleged any facts in its Complaint from which the Court can find irreparable harm. American Tire alleges that by violating the Agreement, Am-Pac has "unfairly inherited the confidential customer information Wroten and Robinson had about their customers and the good will associated with each." (Pl. Mem. in Supp. p. 12). American Tire further argues that as a result of Am-Pac's alleged solicitation of Robinson and Wroten, Am-Pac received and is using American Tire's unspecified trade secrets and confidential information. Notably, American Tire has not identified the specific trade secrets or confidential information that it alleges Am-Pac received and is using. *See FMC Corp. v. Cyprus Foote Mineral Co.*, 899 F. Supp. 1477, 1481 (W.D.N.C. 1995) (noting that a plaintiff must identify a trade secret with sufficient particularity so that a court can decide whether misappropriation has occurred or is likely to occur). Moreover, American Tire has not alleged that either Wroten or Robinson took any confidential information or documentation from American Tire during or at the conclusion of their employment.

It is also notable that Plaintiff filed a Motion to Continue, arguing that the parties needed to engage in discovery prior to this Court holding a hearing on the Preliminary Injunction Motion. Such request for a continuance weighs significantly against American Tire establishing

5

actual, imminent, and irreparable harm if the injunction is denied.

Considering all of the circumstances, the Court concludes that American Tire has not established that it will suffer irreparable harm in the absence of a preliminary injunction.

**B.     Potential Harm to Defendant Resulting from Entry of Preliminary Injunction**

American Tire asks the Court to enjoin Am-Pac from continuing to employ Wroten and Robinson. The Court finds that this "remedy" would result in severe harm to Wroten and Robinson, neither of whom are parties to the Agreement. Enjoining Wroten and Robinson would result in actual and imminent harm to these two individuals as they would be deprived of employment and their economic livelihood.

**C.     Plaintiff's Success on the Merits**

Since the Court has found that the denial of a preliminary injunction would not result in actual, imminent, and irreparable harm to American Tire, the Court will not discuss whether it believes that American Tire would succeed on the merits of its claims. The Court notes, however, that it appears American Tire is attempting to bootstrap a covenant not to compete claim onto its breach of non-solicitation agreement claim. A review of the Agreement leads the Court to conclude that there is no covenant not to compete provision within the Agreement. In addition, it is unclear how American Tire has standing to enforce the Agreement between Target and Am-Pac.

**D.     Public Interest**

By requesting a preliminary injunction, American Tire is attempting to restrict Wroten's and Robinson's ability to earn a livelihood. Again, neither individual is a party to the Agreement. Moreover, American Tire has not alleged that Am-Pac is competing *unfairly*.

Rather, American Tire is simply attempting to restrict Am-Pac from competing in the marketplace *at all*. Such restraint is not in the public interest. *See Electric South, Inc. v. Lewis*, 86 N.C. App. 160, 165, 385 S.E.2d 352, 355 (1989) (stating that "[t]he public interest in preserving an individual's ability to earn outweighs the employer's protection from competition '[w]hen the contract is defective . . . because its practical effect is merely to stifle normal competition.'"(*quoting Kadis v. Britt*, 224 N.C. 154, 159, 29 S.E.2d 543 (1944)).

### III. CONCLUSION

In sum, the Court finds that Plaintiff has not established that in the absence of a preliminary injunction it will suffer actual, imminent, and irreparable harm. In contrast, were the Court to grant the requested preliminary injunction, individuals who are not even parties to the Agreement would suffer imminent and actual harm. Moreover, the public interest weighs against the entry of a preliminary injunction. Therefore the Court <u>denies</u> Plaintiff's Motion for Preliminary Injunction and Plaintiff's Motion for Continuance is <u>denied as moot</u>.

Furthermore, the parties are ordered to immediately conduct an initial attorney's conference and discuss what discovery is necessary in this matter. Within fourteen (14) days from the date of this Order, the parties are ordered to submit a written notice to the Court, notifying the Court that they have conducted their initial attorney's conference and outlining what discovery is needed in this case.

**SO ORDERED.**

**Signed: May 11, 2005**

Graham C. Mullen
Chief United States District Judge